| | AUSA: | Timothy Wyse | Telephone: (313) 226-9144 |
|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | Agent: | Timothy C. Janz | Telephone: (586) 709-9068 |

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

United States of America
v.

**BENJAMIN MICHAEL JONES**

Case No.

Case: 2:22–mj–30289
Assigned To : Unassigned
Assign. Date : 6/29/2022
Description: SEALED MATTER (SO)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **May 2021** in the county of **Macomb** in the **Eastern** District of **Michigan**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 46 U.S.C § 70036 | willfully and knowingly violating the terms of an Order of the Captain of the Port |
| 18 U.S.C § 1001 | False Statements |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

*Complainant's signature*

Timothy C. Janz - Special Agent
*Printed name and title*

Sworn to before me and signed in my presence and/or by reliable electronic means.

Date: June 29, 2022

City and state: Detroit, MI

*Judge's signature*

Jonathan J.C. Grey - U.S Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF COMPLAINT AND WARRANT FOR ARREST

I, Timothy C. Janz, Special Agent of the Coast Guard Investigative Service (CGIS), being duly sworn, state that:

## INTRODUCTION AND AGENT BACKGROUND

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in Title 18, United States Code. I have been employed by the Coast Guard Investigative Service (CGIS) as a Special Agent since 2014. I am currently assigned to the Detroit Resident Agent Office (RAO). From 2014 to 2017, I was assigned to RAO Kodiak. During my employment with CGIS, I have investigated federal crimes involving violations of the Ports and Waterways Safety Act, as well as sexual assault, Merchant Mariner Credential fraud, theft, identity theft, fraud, physical and domestic assault, and narcotics.

2. As part of my CGIS duties, I am responsible for, among other things, conducting investigations involving, but not limited to, crimes within the Special Maritime and Territorial Jurisdiction of the United States, cross boarder

smuggling, fraudulent use of official documents, fraud, and the illegal chartering of vessels. I have received training for the Federal Law Enforcement Training Center (FLETC) in Glynco, GA to include the Criminal Investigator Training Program, Special Agent Basic Training, Protective Service Operations, Covert Electronic Surveillance, and Advanced Family and Special Victims Investigations training. I have also completed the United States Coast Guard Boarding Officer School at the FLETC in Charleston, SC. In the eight years leading up to my assignment as a Special Agent, I conducted hundreds of recreational and commercial vessel boardings as a Coast Guard Boarding Officer.

3. This affidavit is made in support of a complaint charging that BENJAMIN MICHAEL JONES violated Title 46 United States Code § 70036 by willfully and knowingly violating the terms of an Order of the Captain of the Port, and Title 18 United States Code § 1001 False Statements.

4. I make this affidavit based upon my personal knowledge, my review of records and other evidence gathered to date, information that I have received from other individuals, including other law enforcement personnel from the Coast Guard Investigative Service that participated in this investigation, as well as my training and experience and the training and experience of other law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause to believe that JONES committed the offenses

contained in the complaint, this affidavit does not concern every fact that I have learned during the course of the investigation, and I have only set forth the facts necessary to establish probable cause that JONES violated the statutes identified above.

## RELEVANT STATUTORY AND REGULATORY BACKGROUND

A. <u>The Ports and Waterways Safety Act Provides for Criminal Punishment for Violation of a Captain of the Port Order.</u>

5. The Ports and Waterways Safety Act ("PWSA"), now codified in Chapter 700 to Title 46 of the United States Code (46 U.S.C. §§ 70001 et seq.)(after December 4, 2018), established a statutory and regulatory framework that ensured, among other things, that the commercial operation of vessels on the waters of the United States would be conducted in a manner that ensured the safety of people, vessels, property (both on land and on the water), and the maritime environment.[1] *See* 46 U.S.C. §§ 70001 et seq. Among other things, the PWSA empowered the Secretary of the Department in which the Coast Guard was operating to order a vessel to "operate or anchor in a manner" as directed by the Secretary if (s)he "has reasonable cause to believe such vessel does not comply

---

[1] On December 4, 2018, the Ports and Waterways Safety Act, as amended, was repealed as part of a general statutory recodification pursuant to the Frank LoBiondo Coast Guard Authorization Act of 2018. *See* Public Law 115-282, 132 Stat. 4192. The provisions of the PWSA, except for the policy statement set forth in 33 U.S.C. § 1221 (2018), were generally recodified to Chapter 700 or Title 46, United States Code.

with any regulation issued under section 70034, or any other applicable law or treaty," or "by reason of weather, visibility, sea conditions, port congestion, other hazardous circumstances, or the condition of such vessel, the Secretary is satisfied such directive is justified in the interest of safety." 46 U.S.C. §70002.

6. As a means to achieve that goal, the PWSA empowered the Coast Guard to promulgate regulations to implement the requirements of the PWSA. *See* 46 U.S.C. §70034(a) (In accordance with section 553 of title 5, the Secretary shall issue, and may from time to time amend or repeal, regulations necessary to implement subchapters I through III and this subchapter).

7. Among the regulations promulgated under 46 U.S.C. §70034 are those codified at 33 C.F.R. Part 160, Subpart B (Control of Vessel and Facility Operations). With some exceptions not pertinent to this case, those regulations apply to any "[v]essel on the navigable waters of the United States." 33 C.F.R. § 160.103. The regulations, at 33 C.F.R. § 160.111, provide for issuance of COTP Orders, in relevant part, as follows:

> Each District Commander or Captain of the Port may order a vessel to operate or anchor in the manner directed when:
>
> (a) The District Commander or Captain of the Port has reasonable cause to believe that the vessel is not in compliance with any regulation, law or treaty; . . . or
>
> (b) The District Commander or Captain of the Port has determined that such order is justified in the interest of safety by reason of weather,

visibility, sea conditions, temporary port congestion, other temporary hazardous circumstances, or the condition of the vessel.

8. These regulations, at 33 CFR §160.105, further provide that compliance with a COTP Order is mandatory, as follows: "[e]ach person who has notice of the terms of an order issued under this subpart [33 C.F.R. Part 160, Subpart B] must comply with that order."

9. The PWSA, 46 U.S.C. §70036(b)(1) provides: "Any person who willfully and knowingly violates subchapters I through III or this subchapter or any regulation issued thereunder commits a class D felony."[2] Subchapter I relates to vessel operations, subchapter II relates to ports and waterways safety, and subchapter III relates to conditions for entry into U.S. ports. Subchapter IV (which encompasses 46 U.S.C. §70036(b)(1))) relates to definitions, regulations, enforcement, investigatory powers, and applicability of the PWSA. 33 C.F.R. § 160.105 and §160.111 are issued under the authority of subchapter I, vessel operations, (46 USC §70001-46 USC §70003), and subchapter IV (46 USC §70034).

10. Thus, any person who willfully and knowingly violates a COTP Order has violated 33 C.F.R. § 160.105 and §160.111, Coast Guard regulations issued

---

[2] Pursuant to 18 U.S.C. § 3581(b)(4), an offense defined as a Class D felony may be punished by a term of imprisonment of not more than six years imprisonment.

under subchapters I through IV of the PWSA through 46 U.S.C. §70034(a), and therefore has committed a felony violation of 46 U.S.C. §70036(b)(1).

11. For purposes of carrying out its operational duties, the Coast Guard divides the United States into various "Sectors." Coast Guard Sector Detroit is comprised of 11 Coast Guard Stations/Units. The Area of Responsibility for Sector Detroit covers two states (Ohio and Michigan) stretching from Marblehead, Ohio, to Tawas, Michigan; a span that includes a 427 mile border with Canada along one of the world's busiest international river corridors. Coast Guard Sector Detroit is headed by a Captain of the Port located in Detroit, Michigan. Thus, the Captain of the Port in Detroit has jurisdiction to issue COTP Orders to individuals operating on Lake St. Clair and the adjoining waterways.

12. COTP orders are often used by the Captain of the Port in response to "illegal passenger vessel" activity. When the Coast Guard suspects a vessel and/or vessel operator may not be in compliance with the applicable requirements for commercial operations, and there is reasonable cause to believe that the owner or operator may remain non-compliant, a Coast Guard Captain of the Port may issue a COTP order directing the owner or operator to cease commercial operations. The COTP order provides notice of the authority for the COTP order, the penalty for violating the order, and the applicable regulations for commercial operation that must be complied with. Generally, a Captain of the Port will only issue a COTP

order in situations where the Coast Guard notes egregious violations of law or regulation. The COTP will rescind a COTP order only after he or she is convinced that the vessel is in compliance with all federal laws and regulations. Subsequent failure to comply with a COTP order after it has been issued is the basis for criminal liability under 46 U.S.C. §70036(b)(1).

## PROBABLE CAUSE

13. In 2021, I was assigned to an investigation into the unlawful commercial chartering of a 39 foot Sea Ray gasoline powered pleasure craft named "PWR TOWER" operating out of Michigan Harbor, St. Clair Shores, Michigan. Michigan Harbor is a small marina that shares water side access with Miller Marine and land side access with Colony Marine in St. Clair Shores. The address is 24600 Jefferson Ave, St. Clair Shores, MI, 48080. This operating area connects directly with Lake St. Clair and is considered navigable waters of the United States.

14. The commercial chartering of vessels essentially involves the renting of a privately owned vessel in exchange for payment, and most often involves the vessel owner, or a person designated by the vessel owner, serving as captain for the duration of the chartered voyage, which is typically several hours long (*e.g.*, 3-5 hours).

15. It is unlawful for a person to engage in certain commercial charter operations with a vessel that the Coast Guard has not inspected and certificated as meeting all of the Coast Guard's requirements for vessels engaged in commercial operation. It is likewise unlawful for a person to serve as captain of a commercial charter without maintaining a proper Coast Guard credential.

16. During the course of this investigation, the Coast Guard determined that JONES co-owned a vessel (hereinafter, the "PWR TOWER") that JONES has repeatedly used to conduct illegal commercial charter operations.

17. On May 20, 2021, the USCG Sector Detroit Senior Investigating Officer (SIO), who is responsible for investigating violations of civil laws and regulations related to marine casualties, mariner credentialing, and unlicensed mariners acting in a commercial capacity, received a tip from a known, reliable source regarding a suspected illegal charter operating out of Michigan Harbor in St. Clair Shores, MI. The vessel was described as a 39 foot Sea Ray named "PWR TOWER" and believed to be owned and operated by JONES.

18. On the same date, USCG Station St. Clair Shores received an anonymous tip with similar information about a 39 foot Sea Ray that was operating at or near Miller's marina (very close to Michigan Harbor marina) with large numbers of people onboard and advertising charters on Instagram and Facebook.

USCG Station St. Clair Shores dispatched a vessel to Miller's marina to determine if there was any evidence of an illegal charter operating in the vicinity.

19. Upon arrival at Miller's Marina, an individual identified himself and approached the USCG crew; this individual provided them with information that an approximately 40 foot Sea Ray named "PWR TOWER" moored a few slips down from them at Michigan Harbor marina and operated illegal charters. The individual identified the operator as JONES and stated that JONES advertised charters though his Instagram account; username "benjonesdetroit1."

20. On May 21, 2021, the information from USCG Station St. Clair Shores was passed to the SIO. The SIO conducted a USCG licensed Merchant Marine database check and determined JONES did not possess a Merchant Mariner license. On May 24, 2021, during the course of his investigation, the SIO became aware of JONES advertising an upcoming charter on Instagram on May 25 at 7:00 PM which indicated "food-drank-smoke." [sic]. I and the SIO both reviewed JONES's previous advertisements on Instagram. There were several that advertised specific charters, such as one where JONES' advertised, "I'm on a yacht, $100 pp" with max capacity 20 people.

21. On May 25, 2021, I participated in a joint Coast Guard and Michigan Department of Natural Resources (MIDNR) boarding on the PWR TOWER. The boarding was conducted on Lake St. Clair just outside Michigan Harbor Marina in

St. Clair Shores. At approximately 9:00 PM that evening, approximately 23 individuals onboard PWR TOWER departed Michigan Harbor, with JONES on board. At approximately 9:11 PM, in response to information provided by the SIO, a USCG Station St. Clair Shores vessel, with the assistance of two MIDNR vessels, located PWR TOWER operating in Lake St. Clair and conducted a Coast Guard boarding of PWR TOWER. A safety inspection determined there were only 18 personal flotation devices available for the 23 people onboard the PWR TOWER; a violation of 33 C.F.R 175.15. As a result of the insufficient number of flotation devices, the vessel was escorted back to Michigan Harbor Marina for a more comprehensive dockside inspection. Subsequently, the dockside inspection also revealed about 20 small bags containing personal use marijuana and three handguns; including one unregistered handgun.

22. With the PWR TOWER dockside at Michigan Harbor Marina, the SIO conducted consensual interviews with several passengers to determine if they paid fees for a charter. Three of the passengers admitted paying JONES for the charter, but neither provided an amount or method of payment. Based on that information, the SIO informed JONES he was suspected of operating an illegal commercial vessel and issued him a NOV for violations of 46 CFR 15.401 - Serving in a Position/Master Without a License; 46 CFR 16.201- Failure of Marine Employer to Comply with Chemical Test Requirements; and 46 CFR 176.100(a) -

Failure to Have Issued USCG Certificate of Inspection While Operating as a Passenger Vessel. Additionally, JONES was issued a COTP Order, which stated in part:

> On May 25, 2021, members of my staff observed the M/V PWR TOWER, OH 0989 YY, operating with passengers for hire. The Coast Guard has no current record of your vessel being inspected as a small passenger vessel or being operated by an individual licensed by the Coast Guard for this vessel and route.
>
> Title 46 United States Code (U.S.C.) § 3301(8) states that small passenger vessels are subject to inspection. Additionally, 46 U.S.C. § 8902, requires small passenger vessels be operated by an individual licensed by the Secretary to operate that type of vessel in the particular geographic are, under prescribed regulations. Furthermore, 46 U.S.C. §8903, requires self-propelled, uninspected passenger vessels be operated by an individual licensed by the Secretary to operate that type of vessel, under prescribed regulations.
>
> Therefore, M/V PWR TOWER, OH 0989 YY, is hereby ordered to immediately cease operations as a commercial passenger vessel until such time as it can be shown to the satisfaction of the Coast Guard that it is operated by an individual holding an appropriate license and is in compliance with all federal laws and regulations.
>
> This order is given under the authority of Title 46 U.S.C. § 70002 and Title 33, Code of Federal Regulations, Part 160, and will remain in effect until rescinded by my office. To be released from operating restrictions of this letter, within 30 days from the date of this order, you shall notify my office in writing of your intention to operate as a commercial vessel. If you choose to operate as a small passenger vessel or uninspected passenger vessel, you will remain restricted from carrying passengers for hire until you comply with all applicable laws and regulations.
>
> PENALTY FOR VIOLATING THIS ORDER
>
> Section 70036 of Title 46 Unites States Code provides for penalties to any person who violates this order. The statue authorizes a maximum civil

penalty in the amount of $25,000, as adjusted by the Federal Civil Penalties Inflation Act of 1990, as amended, for each day of a continuing violation. The statue further states that: "Any vessel that is used in violation of subchapter [I, II or III] or this subchapter, or any regulations issued under such subchapter, shall be liable in rem for any civil penalty assed pursuant to subsection (a) and may be proceeded against in the United States district court for a district in which such vessel may be found.

A willful and knowing violation of this order may also be tried as a Class D felony.

23. JONES refused to sign receipt of the NOV and the COTP Order. However, while discussing the NOV with the SIO, JONES wrote on a piece of paper, "I Benjamin Jones will not operate commercially, until I meet federal requirements!" "P.S further I AM NOT OPERATING COMMERCIALLY NOR HAVE I BEEN!!!" JONES signed and dated the written statement.

24. On May 26, 2021, JONES arrived at USCG Sector Detroit, located at 110 Mt. Elliott, Detroit, MI, to dispute the NOV and COTP Order he received the prior evening. The SIO approached JONES in the parking lot to discuss the NOV and COTP Order. During the discussion, JONES became irate and ended his conversation with the SIO with words to the effect of, "I've got 26 people getting onboard tonight, y'all better leave me alone." The SIO responded with words to the effect of, "I hope none of them were paying passengers." JONES then stated words to the effect of, "You better leave me alone, you need to leave me alone or you're gonna get fucked." JONES was asked to leave the premises. JONES was

subsequently issued a Coast Guard Barment Order on June 24, 2021 directing him to remain off Coast Guard property.

25. On May 27, 2021, I obtained verification in which JONES submitted a State of Michigan Articles of Organization filing on April 11, 2021 to establish a limited liability company named "Nautical Yacht Masters LLC" organized by JONES and his business partner.

26. Due to an administrative error, the original COTP Order (05-21) that was issued to JONES on May 25 was rescinded. A subsequent COTP Order (06-21), ordering him to cease all commercial operations until fully compliant with applicable laws for carrying passengers for hire, was issued to JONES on June 24, 2021.

27. On June 24, 2021, at the request of Coast Guard Sector Detroit, CGIS Agents hand delivered the updated COTP Order to JONES' residence, which read in part:

> On May 25, 2021, the Coast Guard conducted a boarding of your vessel, the M/V PWR TOWER, OH 0989 YY, in the vicinity of St. Clair Shores, Michigan. During the boarding, it was determined that the M/V PWR TOWER was operating with passengers for hire. Further, the Coast Guard found evidence that you are maintaining a social media site offering passenger-for-hire services.
>
> The Coast Guard has no current record of your vessel being inspected as a small passenger vessel or being operated by an individual licensed by the Coast Guard for this vessel and route. Title 46 United States Code (U.S.C.) § 3301(8) states that small passenger vessels are subject to inspection. Additionally, 46 U.S.C. § 8902, requires small passenger vessels be operated

by an individual licensed by the Secretary to operate that type of vessel in the particular geographic area, under prescribed regulations. Furthermore, 46 U.S.C. § 8903, requires self-propelled, uninspected passenger vessels be operated by an individual licensed by the Secretary to operate that type of vessel, under prescribed regulations. Furthermore, 46 C.F.R. Part 16 requires that marine employers comply with chemical testing requirements for employees, under prescribed regulations.

In my capacity as Captain of the Port (COTP) Detroit, I have determined that operation of your vessel with passengers-for-hire represents a significant unsafe boarding condition and environmental threat to the port and navigable waterways of the United States. Therefore, I hereby order you to immediately cease operations as an Inspected or Uninspected Passenger Vessel, until such time as it can be shown to the satisfaction of the Coast Guard that your vessel is being operated in compliance with all applicable federal laws and regulations.

This order is issued pursuant to my authority as COTP Detroit, as contained in Title 46, Chapter 700 - Ports and Waterways Safety (46 U.S.C. § 70001-70054 ) and the regulations in effect thereunder (33 CFR §160). In accordance with 46 U.S.C. § 70036, failure to comply with this Captain of the Port Order is punishable by a civil penalty of up to $25,000 for each day the vessel is in violation. Willful and knowing violation of this order is a class D felony, punishable by up to six years in prison (18 USC § 3581) or fines of up to $250,000 for an individual or $500,000 for an organization (18 USC § 3571). This Captain of the Port Order is issued without prejudice as to the initiation of civil penalty proceedings for any violations that may have previously occurred.

Should you be aggrieved by this order, you may appeal under the procedures described in 33 CFR § 160.7, and request reconsideration orally or in writing to me directly. Should you be further aggrieved, appeal orally or in writing through this office to the Commander, Ninth Coast Guard District. However, if the appeal is made orally, a written submission is required within five days of the oral presentation. While any request or appeal is pending, all provisions of this order remain in effect.

All questions pertaining to this order may be directed to the Sector Detroit Command Center at (313) 568-9546.

This order will remain in effect until rescinded by me in writing. The Sector Command Center will inform you when I have issued the rescission order."

28. After receiving the COTP Order by CGIS Agents, JONES signed the order and wrote an "appeal note" on the COTP Order which read, "I have not, will not operate commercially, until I have a full captain's license. I am requesting reconsideration of this violation." JONES was provided a copy of the COTP Order for his records upon the CGIS Agents' departure.

29. On July 14, 2021, JONES was issued a Coast Guard Preliminary Assessment Letter (PAL) related to the NOV issued. The PAL explained the civil enforcement process and provided an opportunity for JONES to pay the assessed fine of $3,250.00 or to request a hearing in writing to dispute the finding.

30. On July 22, 2021, JONES called Sector Detroit Command Center numerous times and became increasingly irritated. The CID eventually discussed the PAL with JONES. JONES claimed he was not on the PWR TOWER during the May 25th boarding, that he knew all passengers, and that no one paid for the charter.  As of this affidavit's date, JONES is delinquent on payment for the assessed Coast Guard fine.

31. On August 10, 2021, at approximately 2:30 A.M., USCG Station St. Clair Shores received a report of a vessel fire on Lake St. Clair and responded to the vessel fire near Pier Park, Grosse Pointe Farms, MI. Upon arriving, the vessel

was determined to be the PWR TOWER with JONES as the operator and nine passengers onboard. Prior to USCG arrival, all nine passengers onboard the PWR TOWER were rescued and transferred on another vessel in the vicinity. The fire was extinguished and the USCG vessel crew determined the PWR TOWER was still seaworthy. The USCG towed the PWR TOWER with JONES onboard back to the Michigan Harbor. The passengers from the PWR TOWER were transported back to Michigan Harbor in the rescuing vessel that initially responded to the fire. When questioned by the USCG, the passengers claimed to be on the boat to celebrate a birthday party and that everyone onboard were friends. Prior to their departure, all passengers were identified and provided contact phone numbers to the USCG.

32. On August 30, 2021, Sector Detroit CID conducted consensual interviews of the passengers on board the PWR TOWER at the time of the fire. The CID interviewed WITNESS 1; who stated that, "[i]t was their first time on the vessel and they were there for a friend's birthday party." WITNESS 1 did not know the captain of the vessel or his name but described him as a "black male with dreadlocks and was approximately six feet tall." This description matches the appearance of JONES. WITNESS 1 stated she did not personally pay for the trip, but one of their friends, identified only as "Midnight," paid for their trip on the boat. She recalled the vessel had an oil pressure issue, but the captain continued to

keep going. She saw fire in the panels under the floor as the captain attempted to put it out with a fire extinguisher.

33. WITNESS 2 stated she paid $175 in cash for her and one other person to get on the boat. WITNESS 2 had previously paid to be on the boat on a previous charter, and said the normal rate was $100 per person. However, that evening, WITNESS 2 received a discount because it was their birthday. WITNESS 2 gave the money to an individual they only know by the name "Midnight."

34. WITNESS 3 stated that she was invited to get on the boat to celebrate a friend's birthday and paid $100 cash to get on the boat. WITNESS 3 also stated she did not know the captain of the vessel or the name of the captain. WITNESS 3 stated the owner "should not have a vessel." WITNESS 3 reported being scared during the boat fire, crying, and that she vomited while she was being rescued by another vessel.

35. Recent review of JONES' Instagram posts on June 12, 2022 state, "Don't go to nobody boat without at least a hundred dollars for gas and a bottle. That's standard." Another post on June 14, 2022 advertised, "Pool and Boat Tings Wednesday…Pool 1pm-5pm Boat 6pm-10pm…I got room for only 10 more people! I'm not personally inviting no one." "Standard Boarding rules apply Bottle or food And a blue strip." On June 16, 2022, JONES advertised for the June

24, 2022 Lake St. Clair Jobbie Nooner event and posted, "if you going with me, tap in ASAP."

## CONCLUSION

36. Your affiant submits that there is probable cause to believe that JONES willfully and knowingly violated a COTP Order, lawfully issued under Title 46, Chapter 700, Subchapter I, and the regulations in effect thereunder (33 C.F.R §160). In furtherance of his illegal charter activities, affiant submits that there is also probable cause to believe that JONES knowingly and willfully made materially false, fictitious, and/or fraudulent statements or representations to Coast Guard investigators on numerous occasions.

37. Therefore, your Affiant believes that probable cause exists that BENJAMIN JONES violated 46 U.S.C § 70036 (Violation of COTP Order) and 18 U.S.C § 1001 (False Statements).

Respectfully Submitted,

*[signature]*

Special Agent Timothy C. Janz
Coast Guard Investigative Service

Sworn and subscribed before me
On this 29th day of June, 2022

*[signature]*

Jonathan J.C. Grey
United States Magistrate Judge
Eastern District of Michigan